IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LESLIE SCHERMERHORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF McHENRY, ILLINOIS, | ) |
| | ) |
| Defendant. | )  Jury Demanded |

## COMPLAINT

Plaintiff Leslie Schermerhorn, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States, complains of defendant County of McHenry, Illinois (the "County") for terminating Schermerhorn's employment as Regional Superintendent of Schools of the McHenry County Regional Office of Education, in violation of her constitutional rights.

### Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and 42 U.S.C. § 1983.

2. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), because the defendant resides in this district, and the actions giving rise to this action took place in this district.

### Parties

3. Schermerhorn served as the Regional Superintendent of Schools of the McHenry County Regional Office of Education from 2012 to November 16, 2021.

4. The County is a body politic and corporate in the State of Illinois. The County is managed by a board (the "County Board") whose primary function is to establish the various budgets of the county funds, and to adopt ordinances and rules pertaining to the management and business of the county departments. The County Board, manifesting the will of its members, is by Illinois state law the final policymaker for the defendant County.

### The McHenry County Regional Office Of Education

5. Regional Offices of Education (ROE's), created by Illinois statute, are essential support offices partnering with the Illinois State Board of Education (ISBE) to support local school districts. The thirty-eight regions, called ISBE regions or ROE's, are administered by locally elected Regional Superintendents of Schools.

6. Each ROE office has a number of responsibilities, including making health and life safety visits to all school buildings, conducting school district audits, providing drug-free services for schools, fingerprinting officials, monitoring truancy, renewing teacher certificates, directing and supervising GED programs, and maintaining compliance with state curriculum requirements.

7. Regional Superintendents of Schools are employees of the State of Illinois, elected by the voters in their respective counties to serve as chief administrative officers of their ROE's.

8. The McHenry County Regional Education Office differs from most of the others in Illinois because it comprises a single county, while several offices are responsible for multiple counties.

9. The Illinois School Code imposes certain responsibilities on each county board for an ROE within its jurisdiction, such as authorizing the Regional Superintendent to employ

the assistants needed for her duties, and fixing the compensation of and paying for those assistants; requiring the Superintendent to make reports required by law; and examining and approving or rejecting the reports of the Regional Superintendent made to it.

## Schermerhorn And Her Accomplishments

10. The County Board unanimously approved Schermerhorn to fill the elected office of Regional Superintendent in May 2012 after nearly a yearlong search. The position had been vacant since June 2011 when the outgoing regional superintendent had retired a month early.

11. Schermerhorn was well-qualified. When selected by the County Board, she was the assistant principal at LaSalle Language Academy in Chicago. She earned her Master of Education degree, and she was an attorney prior to working in the educational system for more than thirteen years. The Board turned away the majority of candidates for the Regional Superintendent position because they did not meet the qualifications needed to apply. The then-County Board Chairman said that Schermerhorn "met all of the requirements and has the commitment to do the right things for the students."

12. Schermerhorn was elected to continue as Superintendent in 2014, and was reelected in 2018. During her tenure, the ROE:

   a. Restructured the truancy department to follow truancy cases in an internally designed database getting more students in school;

   b. Obtained a grant to allow most at-risk students to have career skills and manufacturing training;

   c. Obtained a $670k federal grant to educate students, families and community regarding the opioid crisis and other substance abuse issues;

  d. Assisted teachers and paraprofessionals in obtaining their certificates and renewing them;

  e. Maintained a registry of substitute teachers; and

  f. Provided professional development for teachers and administrators.

 13. Dedicated to students, teachers and education in McHenry County, Schermerhorn found the responsibility of her office fulfilling.

**The Campaign Of The County Board Against The ROE And Schermerhorn**

 14. Beginning in late 2016 or early 2017, the County Board initiated and institutionalized a campaign to undermine Schermerhorn and her office.

 15. The Chair of the County Board said that the ROE was an antiquated office that needed to be eliminated.

 16. The County Board cultivated and aggravated the ROE's historical accounting problems which Schermerhorn had inherited with the position.

 17. In 2017, the ROE's bookkeeper position was eliminated. The County Board decided that the County would accept and perform the ROE's auditing responsibility.

 18. The County's Chief Financial Officer, who had held the position for more than twenty-five years or more, set up a QuickBooks system but resigned unexpectedly without completing it. The system was not completed properly, and failed to implement ROE and State school accounting codes.

 19. The County Board put the ROE through repeated debacles. It hired a private firm to do the ROE's accounting, but the firm's accountants were unable to understand the partially implemented system or how funds were distributed and accounted for.

20. The following year, the ROE was relegated to temporary accountants, none of which were familiar with the coding system for Regional Offices or School accounting. The temps did not last long; the best one left for a permanent job after one month.

21. The ROE hired the private accounting firm again to try to create the annual financial statement. The accountants were unable to reconcile fund balances.

22. In June of 2019, the Illinois Auditor General's Office identified multiple problems in the McHenry County Regional Office of Education's financial reporting, as it had done annually for five years. The accounting issues were not the result of fraud.

23. The Auditor General's Office determined that the McHenry County office did not have sufficient control over the financial reporting process. The same problem was reported in fiscal 2014 and each subsequent year.

24. The ROE's office staff comprised six employees, three of which are provided for by the County: a Licensure Specialist, an Administrative Assistant II, and the Truancy Officer. The other three were Regional Superintendent Schermerhorn, the Assistant Regional Superintendent, and an employee hired through a drug-free community federal grant.

25. As of September 2021, the County Board had once again refused to allocate the ROE funds for a staff accountant for that year and the next. The County Board's lack of funding, in derogation of its statutory duty, for recruiting and training accounting personnel with the knowledge, skills and experience to prepare the necessary financial statements, rendered the development of sufficient internal accounting controls impossible.

26. The County Board's refusal to fund a qualified accountant for the ROE was a continuation of its long-standing policy of undermining Schermerhorn, attacking her state-

created position, and preventing her from being able to fulfill the duties of her position as Regional Superintendent of Schools.

28. On several occasions, Schermerhorn had asked the McHenry County State's attorney for an opinion about whether she could sue the County Board to require it to fund a qualified accountant for the ROE. The State's attorney advised her that she could.

28. The Chair of the County Board blamed Schermerhorn for the problems the County Board had fostered.

### Schermerhorn Testifies Before Lawmakers

29. On September 1, 2021, Schermerhorn appeared before the Illinois Legislative Audit Commission and the Illinois Auditor General, and explained the reasons for the ROE's inability to provide proper financial statements in a timely matter. She described the County Board's long-term de facto policy of imposing the County's failed accounting system on the ROE, and the County Board's refusal to fund an accountant qualified to adopt and maintain an accounting system compliant with school and ROE requirements.

30. Schermerhorn testified that she had investigated whether to sue the County Board to enforce its obligation to fund an accountant for the ROE, but because the State's Attorney also represents the Board, the ROE would have to hire outside counsel, which she decided was not in the best interests of the taxpayers.

31. One of the State representatives at the hearing said, "[S]he needs an accountant. I don't know, I think we go get the County Chairman, that's what I think."

## The County Board Retaliates For Schermerhorn's Testimony To The Legislative Audit Commission

32. At the meeting of the County Board Finance and Audit Committee on September 9, 2021, several County Board members expressed anger at how Schermerhorn had portrayed the County Board to lawmakers.

33. A member of the committee disclosed listening to the Legislative Audit Commission hearing about the ROE. The members of the County Board were on constructive notice of the State's attorney's opinion regarding their statutory obligation to fund a qualified accountant for the ROE.

34. At the September 21, 2021 County Board meeting, a member called for Schermerhorn's removal. The Chair said board members would talk "offline" about how to go forward with the member's suggestion.

35. On October 7, 2021, Schermerhorn emailed a request to the State's attorney for appointment of a special prosecutor to sue the County for funding for an ROE accountant. A special prosecutor was necessary due to the State's attorney's conflict of interests between Schermerhorn and the County. The State's attorney appointed a special prosecutor that day.

36. The appointment of the special prosecutor was filed with the Circuit Court of McHenry County as a public record.

37. The County Board Chair asked Schermerhorn to resign on October 8, 2021. She refused.

38. In the context of removing Schermerhorn, the Chair claimed that the county planned to add a specialized accountant to the county's finance department to handle accounting for the ROE. The County Board never hired a specialized accountant for the ROE to assist Schermerhorn.

39. On November 3, 2021, the Administrative Services Committee of the County Board recommended that a resolution removing Schermerhorn as Regional Superintendent of Schools be approved at the November 16, 2021 Board meeting. The resolution falsely accused Schermerhorn of neglect.

40. The County Board approved the resolution removing Schermerhorn at its November 16, 2021 meeting. The resolution passed unanimously, except for the Chair's abstention and one member's absence.

## Count 1 – Section 1983 - Removal Violation of First Amendment Right of Free Speech

Paragraphs 1 through 40 are incorporated by reference.

41. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages.

42. The First Amendment of the United States Constitution protects a public employee's right to speak as a citizen addressing matters of public concern.

43. Schermerhorn's comments to the Legislative Audit Commission regarding the County Board's efforts to cripple her ability to fulfill her duties was speech on matters of public concern that is protected by the First Amendment.

44. The Illinois School Code afforded Schermerhorn a four year term of office, which had not yet expired when the County Board removed her. 105 ILCS 5/3-1.

45. The County, by its agent the County Board, itself a creation of the State of Illinois, claimed authority to remove Schermerhorn under the Illinois School Code, specifically 105 ILCS 5/4-10, which provides that the County could only remove her for neglect or refusal to make required reports, or for any palpable violation of law or omission of duty.

8

46. The County Board, manifesting the will of its members, is by Illinois state law the final policymaker of the defendant County.

47. As agents of the County, members of the County Board, violated Schermerhorn's First Amendment right of free speech by removing her in retaliation for her testimony before the Legislative Audit Commission.

48. The County's removal of Schermerhorn would chill other elected county officials of ordinary firmness from publicly criticizing members of the County Board and their actions.

49. As the direct result of the County's violation of Schermerhorn's First Amendment rights through its official policy, Schermerhorn suffered lost compensation in the form of back pay and benefits, damage to her career, damage to her reputation, severe emotional distress and other damages.

### Count 2 – Section 1983 – Property Interest and Liberty Interest Damage
### Violation of Fourteenth Amendment Right To Due Process

Paragraphs 1 through 40 are incorporated by reference.

50. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages.

51. The Fourteenth Amendment to the U.S. Constitution provides that no State shall deprive any person of life, liberty, or property, without due process of law.

52. The members of the County Board are agents of the County, which itself is an administrative subdivision of the State of Illinois.

53. The County's termination of Schermerhorn was the culmination of the County Board's long-standing policy of undermining her, attacking her state-created position, and preventing her from being able to fulfill the duties of her position as Regional Superintendent of Schools.

9

54. The County Board, manifesting the will of its members, is by Illinois state law the final policymaker of the defendant County.

55. The Illinois School Code afforded Schermerhorn a four year term of office, which had not yet expired when the County Board removed her. 105 ILCS 5/3-1.

56. The members of the state-authorized County Board, acting as agents of the County, claimed authority to remove Schermerhorn under the Illinois School Code, specifically 105 ILCS 5/4-10, which provides that the Board could only remove her for neglect or refusal to make required reports, or for any palpable violation of law or omission of duty.

57. By granting her a four year term of office and by restricting the County's ability to remove her, Illinois law granted Schermerhorn a property interest in her employment as Regional Superintendent of Schools. In addition, Schermerhorn has a liberty interest in her reputation implicating and directly affecting her future employment opportunities.

58. As a public employee with a property interest in her employment and a liberty interest in her reputation implicating and directly affecting her future employment opportunities, Schermerhorn was entitled to procedural due process in the form of notice of the County Board's charges against her and the opportunity to respond in a meaningful hearing, as required by the Fourteenth Amendment.

59. The County Board removed Schermerhorn without providing her notice of the charges against her or the opportunity to respond in a meaningful hearing.

60. The County Board, by its enacted resolution to remove her and otherwise, uttered false statements about Schermerhorn which were injurious to her reputation and her future employment opportunities.

61. Acting as an agent of the County, the County Board violated Schermerhorn's Fourteenth Amendment rights by removing her without procedural due process and by uttering false, injurious statements about her which were then publicized in the form of Board minutes and otherwise.

62. As the direct result of the County's violation of Schermerhorn's Fourteenth Amendment rights, Schermerhorn suffered lost compensation in the form of back pay and benefits, damage to her career, damage to her reputation and future employment opportunities, severe emotional distress and other damages.

Wherefore, plaintiff Leslie Schermerhorn requests the Court to enter judgment in her favor against defendant County Of McHenry, Illinois, and granting her relief in the form of:

A. Damages in the form of lost compensation;

B. Damages for future loss of income;

C. Damages for emotional distress;

D. Damages for injury to her reputation and future employment opportunities.

E. Attorneys' fees; and

F. The costs of this action.

## **Jury Demand**

Plaintiff Leslie Schermerhorn requests a trial by jury.

*s/ Dennis R. Favaro*
One of Plaintiff's Attorneys

Dennis R. Favaro
*dfavaro@favarogorman.com*
Patrick J. Gorman
*pgorman@favarogorman.com*
Andrew H. Haber
*ahaber@favarogorman.com*
Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014
(815) 477-1110

*Schaumburg Office*:

1834 Walden Office Square
Suite 500
Schaumburg, Illinois 60173