## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Leslie Schermerhorn,

       Plaintiff,

       v.

County of McHenry, Illinois,

       Defendant.

Case No.: 3:22-cv-50215

Judge Iain D. Johnston

### MEMORANDUM OPINION AND ORDER

Plaintiff Leslie Schermerhorn sued Defendant County of McHenry ("the County" or "the Board"), alleging that the County violated her First Amendment and Due Process rights. The County moved for summary judgment. For the reasons below, the Court grants-in-part and denies-in-part the County's Motion.

**Background**

To support its State Board of Education, Illinois created thirty-eight Regional Offices of Education ("Regional Office"). Dkt. 1 ¶ 5; Dkt. 9, ¶ 5. Each Regional Office is administered by a Regional Superintendent of Schools ("Superintendent"). The Superintendent is a State employee, elected by the voters in the respective regions for four-year terms. 105 ILCS 5/3-1; Dkt. 74 ¶ 4. Among other responsibilities, the Superintendent authors reports, conducts audits, and supervises Regional Office employees. A county board may remove a Superintendent from office for neglect, violation of law, or omission of duty. 105 ILCS 5/4-10; Dkt. 74 ¶ 13.

Schermerhorn was last elected as the McHenry County Regional Office Superintendent in 2018, running unopposed. Dkt. 72 ¶ 2; dkt. 74; ¶ 2. On September 1, 2021, Schermerhorn testified before Illinois legislative commissions about the Regional Office's finances. Dkt. 72 ¶ 6; dkt. 74; ¶ 6. She testified in her official capacity as Superintendent and it related to her official duties. Dkt. 63 ¶¶ 9–10; dkt. 71 ¶¶ 9–10. In that testimony, Schermerhorn said that the McHenry County Board put her through a "series of debacles," by eliminating certain positions and implementing new accounting systems. Dkt. 72 ¶ 7; dkt. 74 ¶ 7. A newspaper reported on Schermerhorn's testimony. Dkt. 72 ¶ 10; dkt. 74 ¶ 10.

1

Approximately a week later, on September 9, 2021, the County Board chairman advised the Board's Finance and Audit Committee that he found Schermerhorn's testimony "concerning and very inaccurate." Dkt. 72 ¶ 8; dkt. 74 ¶ 8. Other Finance & Audit Committee members similarly found Schermerhorn's testimony "extremely disappoint[ing]." Dkt. 72 ¶¶ 10–12; dkt. 74 ¶¶ 10–12. The Chairman asked County administrators to compile ten years of Regional Office audits. Dkt. 72 ¶ 9; dkt. 74 ¶ 9. Those reports showed "significant deficiencies" in the Regional Office's account and financial records over the prior five years, all of which coincided with Schermerhorn's time in office. Dkt. 63 ¶¶ 4–5; dkt. 71 ¶¶ 4–5.

On November 14, 2021, the County Board published a notice on its website that the County Board would vote on whether to remove Schermerhorn on November 16, 2021.[1] Dkt. 63 ¶ 15; dkt. 71 ¶ 15. The notice included a factual basis for the resolution. Dkt. 63 ¶ 21; dkt. 71 ¶ 21. Schermerhorn "regularly reviewed" the Board's meeting notices. Dkt. 63 ¶ 19; dkt. 71 ¶ 19. And Schermerhorn reviewed this notice approximately forty-eight hours before the vote. Dkt. 63 ¶ 22; dkt. 71 ¶ 22. She did not receive personal notice or direct correspondence from the Board. Dkt. 72 ¶ 14; dkt. 74 ¶ 14.

Schermerhorn knew that she would only be given three minutes to present her case at the meeting, and believed that was an insufficient amount of time. Dkt. 72 ¶ 19; dkt. 74 ¶ 19. Her attorney notified the County Board the day before the meeting, arguing that the vote would violate Schermerhorn due process rights. Dkt. 72 ¶ 18; dkt. 74 ¶ 18.

Schermerhorn did not attend the meeting. Dkt. 72 ¶ 19; dkt. 74 ¶ 19. Instead, she watched the proceedings in real time on the County's online portal. Dkt. 63 ¶ 38; dkt. 71 ¶ 38. She admitted that some County members would have "meaningfully weighed" Schermerhorn's arguments if she presented them at the meeting. Dkt. 63 ¶¶ 26–35; dkt. 71 ¶¶ 26–35. She also admitted that many of the County's noted deficiencies of her office were "valid criticisms." Dkt. 63 ¶ 43; dkt. 71 ¶ 43. At the end of the meeting, the County Board unanimously voted to remove Schermerhorn as Superintendent, citing its authority under 105 ILCS 5/4-10. Dkt. 72 ¶ 13; dkt. 74 ¶ 13.

**Analysis**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant, construing the evidence and all reasonable

---

[1] The Parties don't reference November 14th, but they frequently note that a notice was published "forty-eight hours" before the hearing, which occurred on November 16th.

inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). Schermerhorn's Complaint raises two counts under Section 1983, a First Amendment claim and a Due Process claim. The Court addresses each in turn.

### 1) First Amendment Claim

Schermerhorn alleges that the Board fired her in retaliation for her testimony to the state legislature, violating her First Amendment rights. In its Motion, the Board relies on *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410 (2006), arguing that the First Amendment doesn't protect Schermerhorn's testimony. Dkt. 65, pgs. 4–6. In Response, Schermerhorn argues that *Pickering* and *Garcetti* are inapposite, because those cases concerned *employees* whereas she's an *elected* official. Dkt. 70, pgs. 4–6. The Seventh Circuit hasn't addressed whether *Garcetti* applies to elected officials, and this is a matter of first impression in the Northern District.

In *Pickering*, the Supreme Court held that a "[s]tate has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." 361 U.S. at 568. When the state acts as an employer, courts must "balance" the interests of the citizen–employee in commenting on "matters of public concern," and the employer–state's interest's in promoting workplace efficiency. *Id.*

Elaborating on *Pickering*, the Court held in *Garcetti* that courts should conduct a two-part analysis. 547 U.S. at 418. First, did the employee speak "as a citizen on a matter of public concern." If the answer is no, there's no First Amendment claim. *Id.* If the answer is yes, then a possible First Amendment claim exists, if the state lacked adequate justification for treating the employee differently from the general public. *Id.*

All that's well and good. However, the Court agrees with Schermerhorn (and numerous other courts)[2] that *Pickering*/*Garcetti* doesn't apply to elected officials like herself. Here's why:

---

[2] In her Response's appendix, Schermerhorn collects fifteen post-*Garcetti* opinions either rejecting *Garcetti*'s application to elected officials or reasoning that the rationales shouldn't apply, including *Zerla v. Stark County*, No. 1-19-cv-01140, 2019 U.S. Dist. LEXIS 124586 (C.D. Ill. July 25, 2019); *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 823–27 (D.N.J. 2020); *Hedquist v. Patterson*, 14-cv-0045, 2017 U.S. Dist. LEXIS 218078 (D. Wyo. April 14, 2017); *Melville v. Town of Adams*, 9 F. Supp. 3d 77 (D. Mass. 2014); *Will Bradshaw v. Salvaggio*, 20-cv-01168, 2020 U.S. Dist. LEXIS 250873 (W.D. Tex. Oct. 28, 2020); *Holloway v. Clackamas River Water*, 3:13-cv01787, 2014 U.S. Dist. LEXIS (D. Or. Dec. 9, 2014); *Zimmerlink v. Zapotsky*, Civ. No. 10-237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. April 11, 2011).

Two years before *Pickering*, the Supreme Court stressed that in a representative government, "the manifest function of the First Amendment requires that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). The Amendment's "central purpose" is to ensure "uninhibited, robust, and wide-open" debate on public issues. *Id.* Indeed, legislators have "an obligation," the Court found, to take positions on controversial political questions so that their constituents can be fully informed," able to assess the elected official's qualifications, and represented in government debates. *Id.* So, the Supreme Court imagines two parallel doctrines, one for public employees, who are entitled to only limited First Amendment protections, and the other for elected officials for whom the Amendment applies with full force.

And *Bond* aside, it wouldn't make sense for *Pickering/Garcetti* to govern elected officeholders. Premised on public employee efficiency and management concerns, *Pickering* and *Garcetti*'s rationale "is[n't] applicable to elected officials." *Boquist v. Cortney*, 32 F.4th 764 (9th Cir. 2022); *see also Werkheiser v. Pocono Twp.*, 780 F.3d 172, 178–80 (3d Cir. 2015) (noting that "[m]any of the reasons for restrictions on employee speech appear to apply with much less force in the context of elected officials."); *Rangara v. Brown*, 566 F.3d 515 (5th Cir. 2009) *rev'd on banc* on mootness grounds, 584 F.3d 206 (5th Cir. 2009) ("None of the Supreme Court's public employee speech decisions qualifies or limits the First Amendment's protections of elected officials' speech."). The *Garcetti* Court sought to "ensure[] that government employers could supervise employees without constitutionalizing every grievance." *Warren v. DeSantis*, 90 F.4th 1115, 1129–31 (11th Cir. 2024). "But the electorate controls elected officials and disciplines them by withholding votes if it disapproves of their performance." *Id.*[3] *See also Hanania v. Loren Maltese*, 319 F. Supp. 2d 814, 830 (N.D. Ill. 2004) (a pre-*Garcetti* case noting the "significant distinction" between policymaking employees and elected officials, and that the doctrinal exception doesn't apply to the latter).

The people of McHenry County last elected Schermerhorn to serve as their Superintendent in 2018. Under Illinois law, Schermerhorn held an elected office and, barring misconduct, was entitled to a four-year term. The State gave the Board the power to remove Schermerhorn, but she otherwise held her own office and supervised her own staff.

Testifying in her official capacity as Superintendent and in relation to those duties, Schermerhorn informed the legislature about what she considered to be the Board's failures. The First Amendment protected her right—perhaps obligated her—to do so. Her constituents likewise deserved to have their elected representative express those

---

[3] The Eleventh Circuit "remained skeptical about applying *Garcetti*," but declined to decide the questions because it found the First Amendment applied even under *Garcetti*.

views. Indeed, her testimony could have informed whether her constituents would elect her for another term. And even if *Garcetti* applied to elected officials in general, the rationale wouldn't hold water in this case because the Board didn't have day-to-day supervisory responsibility over Schermerhorn.

In its Brief, the Board presumed that *Garcetti* applied and concluded that the First Amendment didn't protect Schermerhorn's speech. It didn't consider her elected-official status. In Reply, the Board points to a few cases around the time *Garcetti* was decided that found *Garcetti* applicable to elected officials. *See Hartman v. Register*, 1:06-cv-33, 2007 U.S. Dist. LEXIS 21175 (S.D. Ohio, June 17, 2007) (finding the distinction between elected officials and employees "inconsequential" under *Garcetti*); *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009) (same); *Hogan v. Twshp. of Haddon*, No. 04-2036, 2006 U.S. Dist. LEXIS 87200 (D.N.J. Dec. 1, 2006) (applying *Garcetti* to an elected official, but not considering whether that status mattered); *Parks v. City of Horseshoe Bend*, 480 F. 3d 837 (8th Cir. 2009) (writing in a footnote that *Garcetti* would apply to the elected official, but not discussing the rationale). To the extent those courts considered the question at all—as opposed to summarily concluding *Garcetti* applied—the Court finds the many decisions cited earlier far more persuasive.

Switching gears, the Board's Reply also refocuses its argument, contending that it was entitled to terminate Schermerhorn because of her poor performance. In essence, the Board contends it had an independent basis to terminate her, so her testimony—protected or not—wasn't the impetus. Without citing the decision, this argument is basically a *Mt. Healthy* defense. *See* Dkt. 73, pgs. 2–3. Critically, reliance on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) is an affirmative defense for which the County bears the burden of proof. *Brown v. Leflore Cnty.*, 150 F. Supp. 3d 753, 769 (N.D. Miss. 2015). The *Mt. Healthy* affirmative defense also goes to causation, which is makes reliance on this defense doubly more problematic at the summary judgment stage. *Id.*

But the Court must consider the facts in the light most favorable to Schermerhorn, and draw reasonable inferences in her favor. It's possible the Board fired Schermerhorn because they believed her conduct constituted neglect or omission of duty. But the evidence also shows that Board members were upset about her testimony, *see* dkt 72 ¶¶ 8–12, and that they fired her only a couple of months after it. A reasonable jury could conclude, based on those facts, that the Board retaliated against her. So, because the speech was protected, the Court can't grant the Board's Motion on the First Amendment claim.

5

### 2) Due Process Claim

Schermerhorn also alleges that the Board violated her procedural due process rights.[4] "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). At a minimum, due process requires (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity to tell her side of the story. *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

Schermerhorn doesn't argue that the Board failed element (2) (an explanation of the employer's evidence). Instead, her argument focuses on prongs (1) and (3), namely that the Board's notice was problematic and that the allotted opportunity to respond was insufficient. The Court addresses those two issues in turn.

#### a) Notice

The Court understands Schermerhorn to raise two issues with the Board's notice. First, the Board's *method* of notifying her (via its website) was constitutionally insufficient. Second, the notice's *timing* in relation to the hearing (forty-eight hours ahead) was inadequate.

#### i) Method of Notice

The Board issued a public notice on its website forty-eight hours before the scheduled meeting. That notice listed Schermerhorn's employment termination vote as an agenda item and included a proposed resolution memorializing the Board's bases for terminating her. Schermerhorn "regularly reviewed" the Board's online notices. Yet, Schermerhorn essentially argues that the public notice didn't meet due process requirements, because there were more effective means to establish personal notice. *See* dkt. 70 pgs. 9–11 (highlighting cases establishing that notice should be "reasonably calculated" to afford notice, that the "means employed must be such as one desirous of actually" notifying a party, and that courts generally view notification via publication suspiciously) (citations omitted).

But, as the Board argues, Schermerhorn admits she had *actual* notice two days before the hearing. So, even if there were publication issues—Schermerhorn's cites to newspaper publication cases seem inapposite—she was actually aware of the underlying allegations, satisfying due process. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (rejecting due process challenge where creditor

---

[4] To demonstrate a procedural due process violation, a plaintiff must establish a cognizable property interest and a deprivation of that property. *Hudson v. City of Chi.*, 374 F.3d 554, 59 (7th Cir. 2004). The Board doesn't argue that Schermerhorn lacked a property interest in her elected position, nor would such an argument be persuasive.

received actual notice even though notice didn't comply with bankruptcy rules). "Although due process does not require actual notice, actual notice satisfies due process if it apprises a party of the pendency of the action and affords an opportunity to respond." *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 429 (2d Cir. 2011) (internal citations omitted).[5]

### ii) Timing of Notice

Next, the Court addresses the alleged timing issue. Schermerhorn argues that forty-eight hours provided constitutionally insufficient time to prepare for the meeting. The Seventh Circuit hasn't "specified how far in advance an employee must receive notice." *Griffin v. Bennett*, 204 F. App'x 565, 567 (7th Cir. 2006). That's unsurprising, because hard and fast timing requirements are inherently inconsistent with due process' flexible standards. But this Circuit suggested that, in some circumstances, "contemporaneous notice may suffice," *Griffin*, 204 F. App'x at 567 (citing *Staples*), as could notice the night before a hearing, *Panozzo v. Rhoads*, 905 F.2d 135 (7th Cir. 1990). Ultimately, courts should consider whether the employee had enough time to "gather his thoughts and his evidence and [] make an informed decision about the best way to respond to the charges." *Staples*, 142 F. 3d at 386 (noting that a "few hours warning" could satisfy).

Schermerhorn distinguishes those cases on their facts, arguing correctly that due process is a flexible standard. But she doesn't meaningfully explain why forty-eight hours falls short in this case. Schermerhorn admits that she saw the notice two days before the hearing. She had time to draft an email regarding the hearing seven hours before it started. Dkt. 71 ¶ 16. And she even met with an attorney, who had time to write a letter to the Board, the day before the hearing. Under *Staples*—and certainly *Panozzo*—Schermerhorn had enough time to prepare for the meeting to satisfy due process.

### 2) Opportunity to be Heard

The Board admits that, under its County Rules, it would have allotted Schermerhorn a maximum of three minutes to respond to the resolution. Dkt. 74 ¶¶ 19, 21. Schermerhorn contends three minutes is constitutionally insufficient in her circumstances. Twenty-four Board members, however, testified or stipulated that they would have "meaningfully weighed" the evidence and "might have reached a different conclusion." *See* dkt. 71 ¶¶ 26–35. The "flexible" due process standard

---

[5] Courts outside the Second Circuit agree. *See Pantle v. Magaha*, No. 3:12-cv-290, 2013 U.S. Dist. LEXIS 154905 (N.D. Fla. Oct. 29, 2013) (noting "[t]he problem for [p]laintiff is that he admits . . . he had actual notice" and collecting other cases); *Heard v. Bravo*, CV 13-1236, 2016 U.S. Dist. LEXIS 192073, at *3 (D.N.M. July 19, 2016); *Avoki v. City of Chester, S.C.*, No. 0:17-1141, 2019 U.S. Dist. LEXIS 145103 (D.S.C. Aug. 27, 2019).

essentially forecloses Schermerhorn's argument that three minutes is per se unconstitutional. The evidence demonstrates that the Board would have considered Schermerhorn's arguments.

But, more importantly, as the Board argues, Schermerhorn waived any right to a pre-termination hearing when she failed to attend the meeting. *See Cliff v. Bd. of School Comm'rs,* 42 F.3d 403, 413–14 (7th Cir. 1994) ("[T]he right to a [pre-termination] hearing generally is waived when an employer offers [it] and the employee fails to accept."); *Baird v. Bd. of Ed. for Warren Comm. Unit Dist. No. 205*, 389 F.3d 685, 694–95 (7th Cir. 2004) ("We have frequently held that terminated employees who do not avail themselves of pre-termination hearings waive their right to contest the adequacy of such hearings");[6] *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (same). Schermerhorn on her own concluded that the three-minute slot wouldn't allow her enough time to meaningfully defend herself. She instead watched the hearing in real-time online. It's possible Schermerhorn rightly predicted the Board's ultimate vote, but to contest the decision after-the-fact requires her participation in the initial hearing. Because she didn't take that opportunity to be heard, the Court must conclude that she waived the right to challenge it.

**Conclusion**

For the above reasons, the Court denies the County's Motion [64] as to Schermerhorn's First Amendment claim, but grants it as to her due process claim.

Entered: February 12, 2025          By:_____

                                        Iain D. Johnston
                                        United States District Judge

_____

[6] Noting the issue was "close," the *Baird* Court ultimately found that the plaintiff didn't waive his right to contest the adequacy of the hearing, in part because he attended it.